## LONGOBARDI v. DULLES, Secretary of State.

No. 11563.

United States Court of Appeals District of Columbia Circuit.

Decided May 7, 1953.

[redacted]

Mr. Jack Wasserman, Washington, D.C., for appellant.

Mr. Charles M. Irelan, U. S. Atty., at the time of argument, Mr. Joseph M. Howard, Asst. U. S. Atty. at the time the record was filed, and Messrs. William R. Glendon and William E. Kirk, Jr., Asst. U. S. Attys. at the time of argument, Washington, D. C., for appellee.

Before STEPHENS, Chief Judge, and PRETTYMAN and WASHINGTON, Circuit Judges.

STEPHENS, Chief Judge.

This case is before the court on an appellant's "Motion for Entry of Partial Judgment of Reversal". The appeal in which the motion is made is from a judgment of the United States District Court for the District of Columbia entered in an action filed by the appellant as plaintiff on May 31, 1950. The action was filed under the Act of October 14, 1940, c. 876, Title I, Subchap. V, § 503, 54 Stat. 1171, Title 8, § 903 U.S.C.A., which, so far as here pertinent, provides as follows:

If any person who claims a right or privilege as a national of the United States is denied such right or privilege by any Department or agency, or executive official thereof, upon the ground that he is not a national of the United States, such person, regardless of whether he is within the United States or abroad, may institute an action against the head of such Department or agency in the District Court of the United States for the District of Columbia or in the district court of the United States for the district in which such person claims a permanent residence for a judgment declaring him to be a national of the United States. If such person is outside the United States and shall have instituted such an action in court, he may, upon submission of a sworn application showing that the claim of nationality presented in such action is made in good faith and has a substantial basis, obtain from a diplomatic or consular officer of the United States in the foreign country in which he is residing a certificate of identity stating that his nationality status is pending before the court, and may be admitted to the United States with

such certificate upon the condition that he shall be subject to deportation in case it shall be decided by the court that he is not a national of the United States. . . .

The appellee, as defendant below, filed an answer and after a trial without a jury on issues thus joined, the District Court made findings of fact in substance and effect as follows: The plaintiff (appellant) was born in New York City on November 14, 1920 of Italian parents. She was returned to Italy in 1923, attained her majority there in 1941, voted voluntarily in administrative elections and again in national elections in Italy in 1946, and returned to the United States in 1950 on a certificate of identity. The correctness of these findings of fact is not in dispute. In view of these findings the District Court made in substance and effect the following conclusions of law: The plaintiff (appellant) was a dual national at birth and her dual nationality continued until after she reached her majority. She lost her American citizenship by failing to return to the United States from Italy within a reasonable time after reaching her majority. If she had not theretofore expatriated herself she did so by voting in the Italian elections in 1946. Upon the basis of these conclusions of law the District Court entered judgment against the appellant and in favor of the appellee. The effect of the judgment is to declare that the appellant is not a citizen of the United States.

The conclusion of the District Court that the appellant had lost her American citizenship by failing to return to the United States from Italy within a reasonable time after reaching her majority was rested, as appears from a memorandum opinion filed by the trial judge, upon Segreti v. Acheson, 90 U.S.App.D.C. 288, 195 F.2d 205 (1952), which decision was itself based upon Perkins v. Elg, 307 U.S. 325, 59 S.Ct. 884, 83 L.Ed. 1320 (1939). The ruling in the Segreti case was that ". . . a child living abroad and possessing dual nationality through the action of his father, may upon reaching majority elect to preserve his American citizenship by promptly returning to this country and assuming the duties thereof, or conversely, by failing to do so retain his foreign nationality." This

ground of the District Court's decision has been made insupportable by the decision of the Supreme Court in Mandoli v. Acheson, 344 U.S. 133, 73 S.Ct. 135, decided November 24, 1952. In that case the Court ruled that a citizen of the United States by birth who by foreign law derives from his parents citizenship of a foreign nation does not lose his United States citizenship by foreign residence long continued after reaching his majority. In so deciding the Court distinguished Perkins v. Elg, pointing out that under the facts in that case Miss Elg, born in America of naturalized parents, Swedish in origin, who took her to Sweden during infancy, had shortly after she reached majority sought and obtained an American passport and returned to the United States where she resided for something like five years. The Court ruled that on these facts Perkins v. Elg did not present and therefore could not decide "any question as to consequences of a failure to elect American citizenship, for Miss Elg promptly did so elect and decisively evidenced it by resuming residence here." The Court limited Perkins v. Elg thus: ". . . . What it held was that citizenship conferred by our Constitution upon a child born under its protection cannot be forfeited because the citizen during nonage is a passive beneficiary of foreign naturalization pro-

ceedings. It held that Miss Elg had acquired a derivative dual-citizenship but had not suffered a derivative expatriation. In affirming her right to return to and remain in this country, it did not hold that it was mandatory for her to do so." The decision of the Supreme Court in Mandoli v. Acheson is, of course, controlling notwithstanding that it is later than the judgment below in the instant case. See Ruppert v. Ruppert, 77 U.S.App.D.C. 65, 134 F.2d 497 (1942) and the authorities cited therein.

The conclusion of the District Court that if the appellant had not theretofore expatriated herself she did so by voting in the Italian elections in 1946, was apparently based, though it did not explicitly refer thereto, upon the Act of October 14, 1940, c. 876, Title I, Subchap. IV, § 401, 54 Stat. 1168, Title 8, § 801(e), U.S.C.A. That statute provides as follows:

A person who is a national of the United States, whether by birth or naturalization, shall lose his nationality by: * * * (e) Voting in a political election in a foreign state . . . .

Under that statute the conclusion was correct. See Bisceglia v. Acheson, 91 U.S. App.D.C. 1, 196 F.2d 865 (1952).

The judgment of the District Court in favor of the appellee is therefore affirmed and the "Motion for Entry of Partial Judgment of Reversal" is denied.[1]

1. It is appropriate to comment that during the oral argument on the appellant's "Motion for Entry of Partial Judgment of Reversal" counsel for the appellant stated that that motion in reality sought affirmance of the judgment of the District Court upon the sole ground that the appellant had voted in Italian elections; that such ruling was sought because of the following provision of Public Law 414, 82d Congress, Chapter 477, 2d Session, Title IV, Sec. 402(j), 8 U.S.C.A. § 1435 note: ". . . a person who, while a citizen of the United States, has lost citizenship of the United States solely by reason of having voted in a political elec-

tion or plebiscite held in Italy between January 1, 1946, and April 18, 1948, inclusive, and who has not subsequent to such voting committed any act which, had he remained a citizen, would have operated to expatriate him, may be naturalized by taking, prior to two years from the enactment of this Act, before any naturalization court specified in subsection (a) of section 310 of the Immigration and Nationality Act, or before any diplomatic or consular officer of the United States abroad, the oath required by section 337 of the Immigration and Nationality Act."