# THE STATE OF NEW JERSEY IN THE INTEREST OF J. M.

Juvenile and Domestic Relations Court, Union County

Decided August 8, 1968.

Mr. *Richard A. Mink*, Assistant Prosecutor, for the State (Mr. *Leo Kaylowitz*, Union County Prosecutor, attorney).

Mr. *H. Douglas Stine*, assigned attorney, for the juvenile.

KENTZ, J. J. & D. R. C. This is a proceeding in the nature of post-conviction relief. The sole question now before the court is whether the determination of the United States Supreme Court in *In Re Gault*, 387 *U. S.* 1, 87 *S. Ct.* 1428, 18 *L. Ed.* 2d 527 (1967), applies both prospectively and retroactively. There is no reported decision in New Jersey on this subject.

The pertinent facts which give rise to this proceeding are as follows. The juvenile was apprehended on the morning of October 27, 1966 by the manager of a supermarket for allegedly shoplifting a carton of cigarettes selling at that time for $3.25. The juvenile was then 17 years old. He was placed in the Union County Juvenile Detention Center on the same date and held on the basis of a parole warrant. A hearing was scheduled for November 3, 1966 and notice was sent to the juvenile's mother notifying her of this fact. Included in this notice was the following statement: "You have the right to retain and be represented by counsel."

The hearing was held on the scheduled date. The complaint was read to the juvenile and he admitted the offense charged. He was not represented by counsel nor did he or his mother request the court to assign an attorney to represent him. Under the practice then existing, based on the law applicable at that time, the juvenile was not advised that the court would assign an attorney to represent him if he so desired and could not afford to retain his own attorney.

While the dollar amount involved in the offense was small, the juvenile had a record of court appearances and adjudications dating back several years. He had already been in-

carcerated for a period of time in the New Jersey State Home for Boys at Jamesburg and in the New Jersey Reformatory for Males at Annandale. In view of this record, the court was of the opinion that the best interests of the juvenile and society would be served by further incarceration and thus committed him to an indefinite term at the New Jersey Reformatory for Males at Bordentown.

On November 22, 1967 the juvenile filed, *pro se,* a "Petition for Writ of Habeas Corpus," citing *In Re Gault, supra,* as the basis for the application. Because of the nature of the relief sought, the matter was treated as being in the nature of post-conviction relief under *R. R.* 3:10A, a new proceeding which has supplanted the older remedy of *habeas corpus* in criminal matters as a means of collaterally attacking a judgment of conviction. *R. R.* 3:10A-3. The matter was referred to this court by the assignment judge pursuant to *R. R.* 3:10A-7, and an attorney was assigned to represent the petitioner pursuant to *R. R.* 3:10A-6(a).

An amended petition for post-conviction relief was filed on May 21, 1968, in which the petitioner alleges a number of grounds for relief cognizable under *R. R.* 3:10A-2(a). However, at oral argument the main force of his contentions was directed against the absence of counsel at the hearing on the complaint. Because of this, and because I feel that the discussion of this point will be dispositive of the petition, this opinion will be limited to that issue.

Petitioner does not allege any irregularities under the law applicable at the time of the hearing; rather he asserts that *Gault* declared that procedure as being contrary to due process and that *Gault* should be retroactively applied to cover his hearing on November 3, 1966. As stated before, this presents a novel question in New Jersey. The issue has arisen in other jurisdictions and the results have varied. Retroactive application has been denied in *Cradle v. Peyton,* 208 *Va.* 243, 156 *S. E. 2d* 874 *(Sup. Ct. App.* 1967), but granted in *Application of Billie,* 103 *Ariz.* 16, 436 *p. 2d* 130 *(Sup. Ct.* 1968) ; *Steinhauer v. State,* 206 *So. 2d* 25 *(Fla. D.*

*Ct. App.* 1967); *Marsden v. Commonwealth,* 227 *N. E. 2d* 1. (*Mass. Sup. Jud. Ct.,* 1967); *State ex rel. LaFollette v. Circuit Court of Brown County,* 37 *Wis. 2d* 329, 155 *N. W. 2d* 141 (*Sup. Ct.* 1967). See also Dorzen and Rezneck, *"In Re Gault* and the Future of Juvenile Law," 1 *Family L. Q.* 1, 28–31 (1967).

In *Gideon v. Wainwright,* 372 *U. S.* 335, 83 *S. Ct.* 792, 9 *L. Ed. 2d* 799 (1963), the Supreme Court held that adult criminal defendants had the right to have the court assign counsel to represent them where they could not afford to retain their own attorney, even in noncapital cases. The unqualified right to counsel prescribed by the Sixth Amendment to the United States Constitution was made applicable to state court proceedings through the Due Process Clause of the Fourteenth Amendment. This decision has been applied retroactively. See *State v. Kramer,* 98 *N. J. Super.* 539 (*Law Div.* 1967), and cases cited at *page* 549.

In *Gault,* the Supreme Court held that juveniles also had the right to be represented by counsel. Justice Fortas, speaking for the majority stated:

"We conclude that the Due Process Clause of the Fourteenth Amendment requires that in respect of proceedings to determine delinquency which may result in commitment to an institution in which the juvenile's freedom is curtailed, the child and his parents must be notified of the child's right to be represented by counsel retained by them, or if they are unable to afford counsel, that counsel will be appointed to represent the child." (387 U. S., at *p.* 41, 87 *S. Ct.,* at *p.* 1451)

The court, while noting *Gideon,* did not specifically apply that decision to juvenile matters; rather, it chose to base its decision solely on the Due Process Clause of the Fourteenth Amendment.

The present case is factually distinguishable from both *Gideon* and *Gault.* In *Gideon* defendant requested an attorney to be assigned and was refused by the court. Here the juvenile did not request that an attorney be appointed to aid him. In *Gault,* though the parents knew they could have

retained counsel, they were not specifically so advised by the court. Here the notice of hearing sent to the mother of the juvenile stated that she could retain and be represented by counsel. The issue, then, is whether the failure of the court to advise the juvenile and his mother that an attorney would be assigned if they were unable to afford their own can now give grounds for a voidance of the former hearing on the basis of a retroactive application of *Gault*.

The question of retroactive application of judicial decisions has recently and exhaustively been researched by other courts in New Jersey, so we may benefit by their analysis.

In *State v. Blanchard*, 98 *N. J. Super.* 22 (*Law Div.* 1967), the court stated:

"Even in cases involving issues of constitutional dimension, there can be no automatic application of the principle of retroactivity which would warrant a new trial for every convicted defendant because the current view of law demonstrates that he had been deprived of a constitutional guarantee. The Constitution neither prohibits nor requires retrospective effect of new judge-made law. *Linkletter v. Walker*, 381 *U. S.* 618, 629, 85 *S. Ct.* 1731, 1737, 14 *L. Ed. 2d* 601 (1965)." (at *p.* 31)

In *State v. Johnson*, 43 *N. J.* 572 (1965), affirmed 384 *U. S.* 719, 86 *S. Ct.* 1772, 16 *L. Ed. 2d* 882 (1966), the court said:

"Retroactive application of any new rule will cause some degree of inconvenience in the administration of justice. Society does have an interest in preventing its courts from being burdened with a flood of relitigation. * * * Furthermore, retroactive application of a new rule of law undermines the authoritative nature of final judicial decisions. Society reasonably expects that when a man is convicted of a crime by a method not considered unfair according to the rules of law then in effect, that conviction will stand. Therefore, unless some countervailing considerations of 'the deepest sentiments of justice' compel otherwise, a new rule of criminal law should not be applied retroactively." (at *pp.* 583–584)

In speaking of retroactivity, the Supreme Court in *Stovall v. Denno*, 388 *U. S.* 293, 87 *S. Ct.* 1967, 18 *L. Ed. 2d* 1199 (1967), said:

"The criteria guiding resolution of the question implicate (a) the purpose to be served by the new standards, (b) the extent of the reliance by law enforcement authorities on the old standards, and (c) the effect on the administration of justice of a retroactive application of the new standards." (388 *U. S.*, at *p.* 297, 87 *S. Ct.*, at *p.* 1970)

In criminal matters collateral attack upon a judgment of conviction is permitted when grave doubts are cast upon the reliability of the determination of defendant's guilt. See *State v. Blanchard, supra,* 98 *N. J. Super.,* at *page* 30, and cases therein cited; *State v. Johnson, supra,* 43 *N. J.,* at *page* 585. And as the above cases indicate, *Gideon* is applied retroactively because the absence of counsel during judicial proceedings has the clear capacity to result in the conviction of a guiltless man.

Just as an adult defendant in a criminal action must be found guilty before he can be penalized, a juvenile in a juvenile proceeding must be adjudged delinquent (guilty) before the court can infringe upon his freedom by institutionalization or otherwise. It would seem compelling that there should be no distinction made as to the need for a reliable guilt-finding process, whether the proceeding be in the adult criminal court or the juvenile court. See *State in the Interest of Carlo,* 48 *N. J.* 224, 236 (1966). And as the court stated in *Gault*:

"A proceeding where the issue is whether the child will be found to be 'delinquent' and subjected to the loss of his liberty for years is comparable in seriousness to a felony prosecution. The juvenile needs the assistance of counsel to cope with problems of law, to make skilled inquiry into the facts, to insist upon regularity of the proceedings, and to ascertain whether he has a defense and to prepare and submit it. The child 'requires the guiding hand of counsel at every step in the proceedings against him.'" (387 *U. S.*, at *p.* 36, 87 *S. Ct.*, at *p.* 1448) ; (footnote citations omitted)

For these reasons I am of the opinion that just as *Gideon* has been necessarily applied retroactively in criminal proceedings, *Gault* must be so applied in juvenile proceedings

where the juvenile was not advised by the court that an attorney would be assigned to represent him if he could not afford to retain his own counsel.

An order will be entered releasing the petitioner in the custody of the appropriate authorities for transportation from the institution in which he is presently confined and placement in the Union County Detention Center. A preliminary detention hearing shall be scheduled as provided in *R. R.* 6:8–3(c). The juvenile shall then be advised of his right to counsel and that the court will assign counsel if he cannot afford to retain his own attorney. In this and all subsequent proceedings the matter will be handled as if this were the initial hearing on the complaint. *Cf. State ex rel. La Follette v. Circuit Court of Brown County, supra.*